UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------

HUGO ANTONIO GARCIA,

                                         Plaintiff,

                                           -v-

COMMISSIONER OF SOCIAL SECURITY,

                                         Defendant.

20 Civ. 7539 (PAE) (SLC)

OPINION & ORDER

---------------------------------------------------------------

PAUL A. ENGELMAYER, District Judge:

      Currently pending are cross-motions for judgment on the pleadings from plaintiff Hugo Antonio Garcia and defendant Commissioner of Social Security (the "Commissioner") under Federal Rule of Civil Procedure 12(c). Garcia seeks review of the decision by the Commissioner denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 301 *et seq.*, which he argues was not supported by substantial evidence and was based on legal error. *See* Dkt. 2. The Commissioner counters that the findings of the administrative law judge ("ALJ") denying Garcia benefits were, on the contrary, based on substantial evidence and free of legal error. Dkt. 16-1.

      Before the Court is the January 31, 2022, Report and Recommendation of the Honorable Sarah L. Cave, United States Magistrate Judge, which recommended that the Court grant Garcia's motion, deny the Commissioner's motion, and remand for further proceedings. Dkt. 28 (the "Report"). On February 14, 2022, the Commissioner filed objections to the Report. Dkt. 29 ("Objections"). On February 25, 2022, Garcia filed his response to the objections. Dkt. 30 ("Opp.").

      For the reasons that follow, the Court adopts the Report's recommendations in full.

## I.   Background

The Court here adopts the Report's detailed account of the facts and procedural history. The following summary captures the limited facts necessary for an assessment of the issues presented.

### A.   Relevant Factual and Procedural Background

On January 18, 2017, Garcia filed an application for DIB, claiming he had been unable to work since November 9, 2016 because of diabetes; injuries to his neck, back, and right shoulder; and high blood pressure. Report at 2.[1] On January 25, 2019, after intermediate administrative proceedings and hearings, ALJ Susan Smith found Garcia not disabled under the Act. *Id.*

On September 11, 2020, Garcia filed the instant suit. *See* Dkt. 2.[2] He challenges five aspects of the ALJ's decision. First, Garcia argues that the ALJ incorrectly determined that he could speak English, leading her to inaccurately determine what types of work were available to him. *See* Report at 21–22, 26. Second, he argues that the ALJ violated the "Treating Physician Rule," which requires the ALJ to give "controlling weight" to a claimant's treating physician as long as it is well-supported and not inconsistent with other substantial evidence, by failing to properly assess the opinions of two psychologists, Dr. Tara Trout and Dr. Elina Spektor. *See id.* at 23, 26; *see also Schisler v. Heckler*, 787 F.2d 76, 81 (2d Cir. 1986) (describing Treating Physician Rule). Third, he argues that the ALJ relied on her own judgment, rather than on medical opinions before her, as to his residual functional capacity ("RFC"). Report at 26. Fourth, he argues that the ALJ failed to properly review his "subjective allegations of pain." *Id.* Fifth and finally, he argues that the ALJ improperly relied on her own judgment as to Garcia's

---

[1] From April 2007 to November 2016, Garcia had worked as a maintenance worker at Mount Sinai Hospital. Report at 3.

[2] Garcia was then proceeding *pro se*, but he is now represented by counsel. *See* Dkt. 23.

2

mental impairment. *Id.* The Commissioner counters that the ALJ's decision should be affirmed because it is based on substantial evidence and correct legal standards.

On July 16, 2021, the Commissioner filed a motion for judgment on the pleadings. Dkt. 16. On December 16, 2021, Garcia filed his cross-motion for the same. Dkt. 25. On December 17, 2021, the Commissioner filed a reply. Dkt. 27 ("Reply").

### B. The Report

On January 31, 2022, Judge Cave issued the Report. Judge Cave found that the ALJ had erred in two respects: by (1) improperly determining that Garcia can speak English, and (2) in making her RFC determination, errantly assessing Garcia's mental impairment by giving inadequate weight to Dr. Trout and Dr. Spektor's opinions. Finding that those errors "undermine the ALJ's . . . determination regarding the existence of a significant number of jobs in the national economy that Mr. Garcia could perform," Judge Cave determined that the ALJ's decision was not supported by substantial evidence. Judge Cave, however, did not find error in the ALJ's physical RFC determination, assessment of Garcia's complaints of pain, or determination of the severity of Garcia's mental impairment. Report at 26–27. Based on her findings of reversible error, Judge Cave recommended that the case be remanded to the Social Security Administration ("SSA") for further proceedings.

On February 14, 2022, the Commissioner filed objections to the Report. She argued, first, that even if the ALJ's evaluation of Garcia's ability to speak English were flawed, it would not affect the outcome on remand "because subsequent changes in the relevant regulations no longer require consideration of a claimant's ability to communicate in English." Objections at 1. Second, she objected to the Report's finding that the ALJ overlooked Drs. Trout and Spektor's opinion in her assessment of Garcia's mental impairment. Their opinion, the Commissioner asserted, "did not constitute medical opinion evidence entitled to greater weight," and the ALJ

3

had appropriately considered it. *Id.* Accordingly, the Commissioner urged the Court not to adopt the Report—and grant the Commissioner judgment on the pleadings.³

On February 25, 2022, Garcia filed his opposition to these objections. He principally argues, first, that the Commissioner inappropriately requests retroactive application of new regulations pertaining to a claimant's English language skills, and, second, that the Commissioner is seeking to avoid the correct assessment of medical opinion evidence. Opp. at 2–3. Garcia accordingly requests remand, either solely for the calculation of the benefits to which he is entitled or remand for further administrative proceedings.

## II. Discussion

### A. Applicable Legal Standards

#### 1. Report and Recommendation

In reviewing a Report and Recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When specific objections are made, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). To accept those portions of the report to which no timely objection has been made, "a district court need only satisfy itself that there is no clear error on the face of the record." *King v. Greiner*, No. 02 Civ. 5810 (DLC), 2009 WL 2001439, at *4 (S.D.N.Y. July 8, 2009) (citing *Wilds v. U.P.S.*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003)); *see also Edwards v. Fischer*, 414 F. Supp. 2d 342, 346–47 (S.D.N.Y. 2006). To the extent that the objecting party makes only

---

³ The Commissioner did not object to the Report's findings that the ALJ had correctly determined Garcia's physical RFC and the severity of his mental impairment and appropriately assessed Garcia's complaints of pain. Objections at 2 n.1.

4

conclusory or general objections, or simply reiterates the original arguments, the court will review the Report and Recommendation strictly for clear error. *See Dickerson v. Conway*, No. 08 Civ. 8024 (PAE), 2013 WL 3199094, at *1 (S.D.N.Y. June 25, 2013); *Kozlowski v. Hulihan*, Nos. 09 Civ. 7583, 10 Civ. 0812 (RJH), 2012 WL 383667, at *3 (S.D.N.Y. Feb. 7, 2012).

### 2. The Commissioner's Decision

In reviewing a final decision of the SSA, a court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The reviewing court "is limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (quoting *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012)). "When there are gaps in the administrative record or the ALJ has applied an improper legal standard," remand to the Commissioner for further development of the evidence may be appropriate. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) (citation omitted).

### B. Analysis

The Commissioner objects to two of the Report's findings.[4] The Court first reviews the Commissioner's objection regarding the ALJ's determination of Garcia's English language

---

[4] Although these Objections largely reiterate arguments previously made, *see* Objections at 3 (objecting "for the reasons already stated" and citing reply brief); Reply at 4 (arguing that Drs. Spektor and Trout did not provide medical opinion evidence), such that review of the Report's findings for clear error only would be permissible, the Court, in an excess of caution, reviews them *de novo*.

5

skills, and then her objection regarding the ALJ's use of medical opinion evidence.[5] As to each, the Court affirms and adopts the Report's findings. As to the Report's remaining three findings, to which no party objects, the Court reviews these for clear error, and finds none.

### 1. English Language Skills

#### a. The Report

The Report found the ALJ's assessment of Garcia's English language ability erroneous and that this error was not harmless. The ALJ's determination that Garcia was able to communicate in English, Judge Cave found, was not supported by substantial evidence, insofar as it was based on Garcia's spontaneous responses to some questions asked in English at his hearing and his concession that he used English as needed at his previous job. These data points, Judge Cave reasoned, were insufficient to support a finding that he could communicate in English. Report at 28. And, she noted, there was persuasive evidence to the contrary. For example, Garcia's paperwork indicated that he could not speak English, and "nearly all the notices the Commissioner had sent to Mr. Garcia were in Spanish." *Id.* at 29.

Judge Cave found this error not harmless, for two reasons. First, under the regulations then in place, the determination that Garcia could not communicate in English would have mandated a finding of disability. *Id.* at 30. Second, "even a limited ability to communicate in English appears to eliminate nearly all the jobs" that the vocational expert ("VE") who testified before the ALJ had found suitable for a person with Garcia's limitations. *Id.* And under the Act, to be disabled for the purposes of DIB, an individual must have a "medically determinable physical or mental impairment" that is, *inter alia*, "of such severity that [the claimant] . . .

---

[5] Garcia also argues that the Commissioner's objections were untimely. Opp. at 2, 7. In fact, the Objections were timely filed—exactly two weeks after the Report was issued. *See* Fed. R. Civ. P. 6(a)(1)(A) (period of days shall "exclude the day of the event that triggers the period").

6

cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy," in addition to being unable to engage in his previous work. 42 U.S.C. § 1382c(3)(A), (B). Because the ALJ therefore had not reliably identified "a significant number of jobs in the national economy that an individual with Mr. Garcia's RFC would be able to perform," Judge Cave found, the ALJ had erred at this step of the disability inquiry. Report at 31.[6]

Judge Cave acknowledged the Commissioner's argument that, due to an intervening change in governing regulations, Garcia's lack of English-language skills would no longer be a basis, on its own, for finding a disability. *Id.* at 32. But she noted, regardless, the rule change would "not obviate the Commissioner's . . . burden to establish the existence of a significant number of jobs in the national economy that Mr. Garcia would be able to perform." *Id.*

---

[6] This step is the final one in the five-step inquiry required by the Second Circuit in evaluating disability claims:

> *First,* the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary *next* considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the *third* inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the *fourth* inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity ["RFC"] to perform his past work. *Finally,* if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform.

*Bush v. Shalala*, 94 F.3d 40, 44–45 (2d Cir. 1996) (quoting *Rivera v. Schweiker*, 717 F.2d 719, 722 (2d Cir. 1983)) (emphasis in *Bush*). "The burden of proving disability, encompassing the first four of these steps, is on the claimant. The burden of proving the fifth step is on the Secretary." *Id.* at 45 (quoting *Rivera*, 717 F.2d at 722–23).

7

### b.    Objections and opposition

The Commissioner objects to these findings on three grounds. First, she defends the ALJ's finding that Garcia was able to communicate in English as supported by substantial evidence. Objections at 3. Second, she argues, on remand, the ALJ would resolve the case de novo under the current regulations, which "no longer contains the educational requirement of an inability to communicate in English." *Id.* at 4–5. Thus, the "outcome on remand would be the same." *Id.* at 5. Third, she argues, there are in fact "sufficient numbers of unskilled sedentary jobs . . . in the national economy" that Garcia could perform "even if he were found unable to communicate in English." That is because this determination should be based on the "Medical-Vocational Guidelines," and not the testimony of the VE on which the ALJ and Judge Cave relied. *Id.* at 6–7.

Garcia defends Judge Cave's findings. He also argues that the new regulation with respect to English language skills will not be applied retroactively. Opp. at 9–10.

### c.    Analysis

#### i.    English language fluency

The Court affirms Judge Cave's finding that the ALJ erred by determining that Garcia was able to speak in English. Garcia stated that he cannot speak, read, or understand English, or write more than his own name in English, and that he can follow spoken or written instructions only if in Spanish. The record did not give the ALJ a sound reason to discredit that testimony. That Garcia spontaneously responded to certain questions asked at the hearing in English does not indicate a broader command of English. On the contrary, his perfunctory responses do not clearly establish even that Garcia truly understood the limited questions to which he responded. *See* Report at 4–5 (Garcia responding only "No problem" to three comments by the ALJ before his interpreter arrived). And the minimal use of English necessitated by Garcia's previous job

8

does not reveal his fluency, either. *See, e.g., Vega v. Harris*, 636 F.2d 900, 904 (2d Cir. 1981) ("brief exchange" with ALJ "is not a substitute for a determination on the question of ability to communicate in English" and "the fact that Vega apparently was able to communicate sufficiently to perform her hotel job does not necessarily mean that she can communicate well enough" in English per the applicable standards); *Estrada v. Comm'r of Soc. Sec.*, No. 18 Civ. 3530, 2020 WL 3430680, at *8 (E.D.N.Y. June 23, 2020) (because "[t]he record establishes that plaintiff does not read, write, speak or understand English, and required a Spanish-English translator to communicate with people speaking in English . . . the court finds that during the period at issue, plaintiff was unable to communicate in English"); *Torres v. Comm'r of Soc. Sec.*, No. 14 Civ. 6438, 2015 WL 5444888, at *6 (W.D.N.Y. Sept. 15, 2015) ("the record contains substantial information to suggest that Torres is unable to communicate in English, which was largely ignored by the ALJ," despite "testimony that she could understand some English and that instructions at her previous job were provided in English").

                ii.      Consequences of English language determination

As noted, the Commissioner argues that, even in the ALJ incorrectly found that Garcia could speak English, remand would be unwarranted, because an SSA regulation effective April 27, 2020 eliminates the ability to communicate in English as an educational requirement at step five,[7] and because the availability to Garcia as non-English speaker of jobs in the national

---

[7] Under the new regulation, effective April 27, 2020, the SSA "will no longer consider whether an individual is able to communicate in English" at step five of the DIB inquiry. 85 Fed. Reg. 10586–87, 2020 WL 885690 (Feb. 25, 2020); *see* 85 Fed. Reg. 13692–02, 2020 WL 1083309 (Mar. 9, 2020) ("When determining the appropriate education category, we will not consider . . . whether the individual lacks English language proficiency."). The SSA stated that "[t]his education category is no longer a useful indicator . . . of the vocational impact of an individual's changes because of changes in the national workforce" since the rule was adopted. 85 Fed. Reg. 10586.

9

economy can be found by the Court based on the Medical-Vocational Guidelines. Objections at 5–6.

The Court need not resolve the first objection because, finding the Commissioner's second objection unavailing, remand is necessarily in order.

As to the first objection, the case authority is divided over whether regulations promulgated by the Commissioner may be applied to claims pending at the time of the regulatory change.[8] And there is not dispositive precedent on the precise question here, to wit, whether, were the ALJ to apply to Garcia on remand the new regulation regarding the implications for a disability finding of a lack of English language capability, such would constitute impermissible retroactive rulemaking. The Commissioner cites in support of the argument that such would be permissible a 2009 Second Circuit case which declined to decide whether a change in regulations that reduced the burden of proof on the Commissioner at step five of the DIB inquiry could be applied to a pending case and noted "some authority that suggests" that such would not be impermissibly retroactive. *See Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (citing *Combs*, 459 F.3d at 646; *Pine Tree Med. Assocs. v. Sec'y of Health & Human Servs.*, 127 F.3d 118, 121 (1st Cir. 1997)). But that holding, on its own terms, was equivocal. And Garcia's case

---

[8] *Compare, e.g., Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640 (6th Cir. 2006) (plurality opinion) (en banc) (finding "a change in a rule governing the adjudication of social security disability benefits claims that is applied as of its effective date to all pending cases" "not impermissibly retroactive"); *McCavitt v. Kijakazi*, 6 F.4th 692, 694 (7th Cir. 2021) ("[W]e have held that amendments to changes in the rules for disability benefits may be applied to pending cases.") *with Maines v. Colvin*, 666 F. App'x 607, 608 (9th Cir. 2016) (memorandum disposition) ("A claimant's eligibility for benefits, once determined, is effective based on the date his or her application is filed. Absent express direction from Congress to the contrary, the ALJ should have continued to evaluate [the claimant]'s application under the listings in effect at the time she filed her application.") (citation omitted); *Christie v. Comm'r of Soc. Sec. Admin.*, 267 F. App'x 146, 146–47 (3d Cir. 2008) (summary order) ("[U]nder the unusual circumstances of this case, we conclude that the regulation in effect when the claim was first adjudicated should control the decision here[.]").

10

involves a different regulation, and Garcia's claim had advanced farther pre-regulation, in that it had been decided by the ALJ, and had review denied by the SSA's Appeals Council, before the new rule became effective. *See* Opp. at 10; *Combs*, 459 F.3d at 649 ("The SSA may freely change rules that purely govern the conduct of adjudication, without fear of retroactive effect, if those changes apply only to pending cases. Naturally, if the SSA had attempted to retry cases that had been adjudicated previously, that might be a different story."); *cf. United States v. Gutierrez*, 443 F. App'x 898, 907 (5th Cir. 2011) (summary order) (declining to apply new regulation retroactively because "the government is attempting to apply the new regulations on remand after deliberately ignoring the old regulation at the first proceeding") (citing *Combs*, 459 F.3d at 649). Whether, on remand, the new regulation would apply presents a more challenging question than the Commissioner assumes.

There is no need for the Court to resolve that question here because, regardless of the applicability of the regulation, remand would be necessary to enable the ALJ—with the factual misapprehension about Garcia's English-language capability corrected—to assess for the first time the extent of jobs available to him in the national economy. That issue had been decided by the ALJ based on the VE's testimony about jobs available to Garcia. As Judge Cave's Report notes, assuming that Garcia was unable to communicate in English, the VE's testimony appears to identify only a limited category of jobs available to him, which essentially involved work as a toy-stuffer. Report at 31–32.

The Commissioner argues that it is "not necessarily the [VE]'s testimony" that would answer this question, and that the Court can look to the Medical-Vocational Guidelines as indicating whether there is work in the national economy that Garcia could perform. Objections at 5–6. Use of that source to make this determination is not, however, obligatory for an ALJ, and

it is not for this Court, in the first instance, to decide whether to do so. Rather, as the Second Circuit has stated, "[a]n ALJ may make this determination *either* by applying the Medical Vocational Guidelines *or* by adducing testimony of a [VE]." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (emphases added). It has further held that "[a]n ALJ may rely on a [VE]'s testimony regarding a hypothetical" question about the jobs available—as the ALJ did here, albeit on the incorrect assumption that Garcia was facile in English—"as long as there is substantial record evidence to support the assumptions upon which the [VE] based his opinion, and accurately reflect the limitations and capabilities of the claimant involved." *Id.* (cleaned up).

It is proper that, in the first instance, the ALJ make the determination as to the jobs available to Garcia in the national economy given his distinct limitations, including determining the resources to draw upon in making that determination. Because a remand is independently warranted to enable the ALJ to make this factual determination, the Court leaves to the ALJ, in the first instance, to determine the effect, if any, that can properly be given on remand to the new regulation on which the Commissioner relies.

### 2. Medical Opinion Evidence

#### a. The Report

The Report recommends remand for a separate reason: because the ALJ's determination of Garcia's RFC did not consider, as required, the psychological diagnoses of Drs. Trout and Spektor. Report at 38.[9] These doctors had determined that Garcia had anxiety, depression, and major depressive disorder, single episode. *Id.* at 8–9. Although the ALJ relied on the doctors' psychological evaluation at step two of the disability inquiry in finding that Garcia's depression constituted a "medically determinable mental impairment," Judge Cave found her assessment of

---

[9] Garcia presented this challenge as an argument that the ALJ had erroneously applied the Treating Physician Rule.

his RFC at step five conclusory, because it did not contain any discussion of the two doctors' psychological evaluation as to the effects on his RFC of Garcia's impairment. *Id.* at 38. Judge Cave found this to be legal error. She recommended remand for the ALJ to more thoroughly assess Garcia's mental impairment in determining his RFC. *See id.* at 38–39 (collecting cases).

### b.   *Objections and opposition*

The Commissioner argues that, contrary to the Report, the ALJ was not bound to consider Drs. Trout and Spektor's opinions because their diagnoses did not qualify as medical opinions. According to the Commissioner, a medical opinion must "assess what [Garcia] could 'still do' with respect to work-related activities," whereas Drs. Trout and Spektor did not do so here. Objections at 7. Alternatively, the Commissioner notes that the ALJ did consider the doctors' evaluations at step two, and argues that the ALJ was not require do more at step five, because "no medical source" had identified Garcia as having any condition limiting his "mental, work-related activities." *Id.* at 8–9. Garcia counters that, as found by Judge Cave, the ALJ was required to evaluate Drs. Trout and Spektor's opinions and that the Commissioner misreads the law. Opp. at 10–11.

### c.   *Analysis*

At the outset, the Court finds the diagnoses of Drs. Trout and Spektor to qualify as medical opinions. The regulations applicable to claims filed before March 27, 2017 define "medical opinions" as "statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1).[10]

---

[10] The more recent regulations, as cited by the Report, state that: "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and

13

The Commissioner argues that the two doctors did not provide "medical opinions" because they did not specifically describe any limitations or discuss Garcia's capabilities. Objections at 7. It is correct that "[c]ourts have held that a doctor's statement that does not contain any assessment of the claimant's *functional abilities* is not properly a medical opinion within the meaning of § 404.1527(a)(1)." *Gladys B. v. Comm'r of Soc. Sec.*, No. 19 Civ. 1166, 2021 WL 1135470, at *7 (W.D.N.Y. Mar. 25, 2021) (emphasis in original) (collecting cases). But, as the Report cogently explains, Drs. Spektor and Trout made such an assessment here: They "opined that Mr. Garcia was 'struggling to function in core areas of his life, which include the social, personal, and occupational domains,'" while reviewing the effects of his depression and the impairment of his memory as limiting his mental functioning. *See* Report at 37. The Court therefore affirms Judge Cave's finding that such constituted medical opinion. *See, e.g., Midgett v. Berryhill*, No. 16 Civ. 2876, 2017 WL 6463062, at *8 (E.D.N.Y. Dec. 18, 2017) ("[A]ny diagnoses, prognoses, and statements about the severity and nature of impairments would be medical opinions."); *Ward v. Comm'r of Soc. Sec.*, No. 17 Civ. 1008, 2019 WL 2106507, at *4 (W.D.N.Y. May 14, 2019) (where cardiologist's statements "reflect[ed] . . . symptoms and . . . restrictions," it constituted judgment about "nature and severity of Ward's impairments" and a medical opinion).

To the extent that the Commissioner's objection is that Drs. Trout and Spektor assessed Garcia's functioning generally rather than proceeding function-by-function, their approach was not precluded by the regulations in place at the time of Garcia's application. As courts have

---

whether you have one or more impairment-related limitations or restrictions in the following abilities," and then lists several such abilities. *See* Report at 36–37 (citing 20 C.F.R. § 404.1513). That standard is narrower than the one applicable here. *See Michael H. v. Saul*, No. 20 Civ. 417, 2021 WL 2358257, at *6 (N.D.N.Y. June 9, 2021).

14

recognized, those regulations "sweep broadly, defining medical opinions as reflecting judgments about the nature not just of what the claimant can functionally do, but also symptoms, diagnosis, and prognosis." *See Russell v. Saul*, 448 F. Supp. 3d 170, 179 (D. Conn. 2020) (quoting *Monahan v. Berryhill*, No. 18 Civ. 207, 2019 WL 396902, at *3 (D. Conn. Jan. 31, 2019)) (cleaned up); *see also, e.g., Urena v. Colvin*, No. 13 Civ. 6270 (LGS) (DCF), 2015 WL 585583, at *16 (S.D.N.Y. Feb. 11, 2015) ("[A] medical opinion is not limited to a functional assessment or to a medical source statement, but includes a physician's opinion as to the 'nature and severity' of the claimant's symptoms, including the physician's opinion as to the claimant's diagnosis and prognosis."); *Shanti P. v. Comm'r of Soc. Sec.*, No. 19 Civ. 6595, 2021 WL 2018713, at *4 (W.D.N.Y. May 20, 2021) (explaining that the ALJ "erred by concluding that [a doctor's] medical source statements did not constitute medical opinions," because even though the doctor did not offer an opinion about the plaintiff's ability to work, the statements "included medical opinions as well"). Thus, "what a plaintiff could do in spite of [his] impairments was just one of the listed factors tending to establish the medical provider's judgments about the nature and severity of the plaintiff's impairments." *Michael H. v. Saul*, No. 20 Civ. 417, 2021 WL 2358257, at *6 (N.D.N.Y. June 9, 2021) (citing 20 C.F.R. § 404.1527(a)(1)).

The heart of the Report's finding of error as to these medical evaluations is that the ALJ failed to consider them at all at step five of the DIB inquiry, in determining Garcia's RFC. The Commissioner rejoins that the ALJ considered these medical evaluations findings at step two, in determining whether Garcia had a severe impairment which significantly limited his physical or mental ability to do basic work activities. *See* Objections at 8 (stating that "the ALJ still specifically considered the evaluation results . . . at step two . . ." and that the doctors' evaluation "played an integral part in the ALJ's step-two conclusion"). To the extent the Commissioner

15

suggests that a review of medical evaluations for step two purposes obviates the need to consider them later in determining the claimant's RFC, that is incorrect, as the Report explains. *See, e.g., Parker-Grose v. Astrue*, 462 F. App'x 16, 17 (2d Cir. 2012) (summary order) (remanding because "Commissioner failed to account for any functional limitations associated with Parker-Grose's depression when determining her [RFC]"); *Cantos v. Comm'r of Soc. Sec.*, No. 19 Civ. 4269 (GBD) (SDA), 2020 WL 5371341, at *11 (S.D.N.Y. July 31, 2020) (despite ALJ's finding that mental impairments were only minimally limiting, "the ALJ did not consider Cantos's medically determinable mental impairment in determining her RFC and, thus, remand is required"), *report and recommendation adopted*, No. 19 Civ. 4269 (GBD) (SDA), 2020 WL 5369919 (S.D.N.Y. Sept. 8, 2020); *Rousey v. Comm'r of Soc. Sec.*, 285 F. Supp. 3d 723, 740 (S.D.N.Y. 2018) ("Although the ALJ's finding that plaintiff's mental impairments were not severe was supported by the record, the ALJ did err in failing to consider plaintiff's mental impairments in determining plaintiff's RFC."); *Schmidt v. Colvin*, No. 15 Civ. 2692 (MKB), 2016 WL 4435218, at *13 (E.D.N.Y. Aug. 19, 2016) ("Because the ALJ failed to account for the limitations imposed by Plaintiff's non-severe mental impairments, the Court remands for consideration of those limitations in determining Plaintiff's RFC."). The Court accordingly adopts the Report's recommendation of a remand for this separate purpose.

### 3. All Other Findings

No party has objected to the Report's other recommendations. The Court therefore has reviewed them for clear error—and has found none. The Report is therefore adopted in full.

### CONCLUSION

For the foregoing reasons, the Court denies the Commissioner's motion, grants Garcia's motion, and remands to the agency for further proceedings,

The Clerk of Court is respectfully directed to terminate the motions pending at dockets 16 and 25, and to close this case.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: March 31, 2022
      New York, New York